UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TONYA ELIZABETH ELLING,

           Plaintiff,

      v.                                                   **DECISION AND ORDER**
                                                                        19-CV-6212S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Tonya Elling brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits under Title II and Title XVI of the Act.  (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application for benefits with the Social Security Administration on April 20, 2016. (R.[1] at 387.) Plaintiff alleged disability beginning on December 24, 2015, due to epilepsy, benign pituitary gland tumor, diabetes, club feet, and depression. (R. at 387-88.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Brian Curley held a hearing on April 27, 2018, at which Plaintiff, represented by her attorney, appeared and testified by videoconference. (R. at 331-66.) Vocational Expert Edmond Pataky also appeared and testified. (R. at 331.) At the time of the hearing, Plaintiff was 29 years old, with a high school diploma and some college, and prior work experience as an assistant

---

[1] Citations to the underlying administrative record are designated as "R."

manager, assistant teacher, camp counselor, housekeeper, and sandwich maker. (R. at 395.)

3. The ALJ considered the case *de novo* and, on May 25, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 13-25.) On January 29, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on March 21, 2019, challenging the Commissioner's final decision.[2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 14.) Plaintiff filed a response on March 4, 2020 (Docket No. 16), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's May 25, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

>mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date of December 24, 2015. (R. at 16.) At step two, the ALJ found that Plaintiff has the following severe impairments: seizure disorder,

disorders of the foot, history of pituitary tumor, and obesity. (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. at 19.)

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work, except that she is

> limited to standing and/or walking two hours of an eight-hour workday, and sitting six hours of an eight-hour workday. She can occasionally balance, stoop, kneel, crouch and crawl. She is limited to occasionally climbing ramps and stairs, and never climbing ladders, ropes and scaffolds. She should avoid all heights and driving automobiles. She is limited to a moderate noise environment as defined by the Selected Characteristics of Occupations. She is limited to unskilled work defined as being able to understand, remember, apply information, focus on and complete simple work-related tasks. She is able to maintain concentration, persistence or pace for simple work.

(Id.)

12. At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 23.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 24.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged disability onset date of December 24, 2015, and the date of the decision. (Id.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the Appeals Council denied review of new evidence she submitted, because the ALJ failed to properly consider the 2016 opinion of a treating

physician, and because the ALJ failed to properly consider Plaintiff's severe and non-severe impairments in his RFC determination.

14.     Plaintiff first argues that the Appeals Council improperly refused to consider medical evidence she submitted after the ALJ's decision, particularly a 2018 opinion by her treating physician Dr. Vitticore. Defendant argues that the Appeals Council properly found that the new evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision.  Defendant's argument is unavailing.

15.     Plaintiff was first diagnosed with a seizure disorder as a child. (R. at 1132.) As an adult, Plaintiff visited neurologist Philip Vitticore for her seizures from 2016 through 2018. (See, e.g., R. at 122, 1127, 1131, 1135, 1137, 1141, 1145.) She experienced several episodes of blackouts and staring spells in 2016. (R. at 1137.) On July __, 2-16, Dr. Vitticore completed a medical opinion form for Plaintiff, in which he opined that she was "unable to work." (R. at 1104.) He stated that Plaintiff had epilepsy, that she was limited by intermittent seizures, and that her "seizures prevent almost all possible job opportunities." (R. at 1105.)

16.     From November 28, 2016 to December 4, 2016, Plaintiff underwent extensive EEG testing at Strong Epilepsy Center.  (R. at 117-19.) This testing revealed that she suffered not from epilepsy, but from psychogenic non-epileptic attacks (PNEA.)[3]

---

[3] "Psychogenic non-epileptic attacks (PNEA) are paroxysmal behaviors that resemble epileptic seizures. In contrast with epileptic seizures, PNEA are not associated with excessive or hypersynchronous electrical discharges in the brain. PNEA constitute one of the most important differential diagnoses of drug-resistant epilepsy because the management of PNEA as epileptic seizures can lead to significant iatrogenic harm. In addition, PNEA pose a substantial burden on patients, their families, and the healthcare system. Video-EEG (VEEG) remains the gold standard diagnostic tool for PNEA and/or epilepsy by allowing clinicians to reach a confident and reliable diagnosis." Hidetaka Tamune et al., Emotional stimuli-provoked seizures potentially misdiagnosed as psychogenic non-epileptic attacks: A case of temporal lobe epilepsy with amygdala enlargement. 9 Epilepsy & Behavior Case Reports 37-41 (Apr. 27, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5913040/ (internal references omitted); accessed 7/24/2020.

(R. at 181.) She was instructed to discontinue taking her seizure medications, because PNEA "cannot be fully controlled by medication." (Id.) On December 16, 2016, Dr. Vitticore noted that she had stopped her seizure medication because she had been determined not to have epileptic seizures, but PNEA.

17. The record shows that Plaintiff continued to have seizure-like PNEA events after she discontinued her epilepsy medication. On October 23, 2017, she had a loss of consciousness. (R. at 221.) On November 10, 2017, she visited the emergency room following a seizure-like event. (R. at 158-161.) On May 5, 2018, she visited the emergency room for headache and dizziness. (R. at 129.) Plaintiff was diagnosed with chronic migraines on February 2, 2018, and was subsequently treated with Botox injections. (R. at 75.)

18. The ALJ found that Plaintiff was able to work, despite her seizure disorder. (R. at 20.) He stated that, while the medical evidence demonstrated that she had a history of seizure disorder, it also demonstrated "effective medication treatment and responsiveness, reduced frequency of episodes…and responsiveness to reducing symptom triggers." (Id.)

19. After her denial by the ALJ, Plaintiff submitted additional records for the Appeals Council to review. Notably, she submitted an opinion from June 12, 2018, in which Dr. Vitticore stated that Plaintiff had PNEA, chronic migraine, syncope, and anxiety. (R. at 327.) He opined that Plaintiff could not engage in full-time competitive employment on a sustained basis, because she "spaces out with her psychogenic attacks, she has significant migraines, she occasionally blacks out, she has anxiety and gets overwhelmed, she cannot drive." (R. at 328.) He further opined that she would be "off-

task" more than 30% of the time during a normal workday, and that she would be absent from work more than four days per month due to her impairment. (R. at 329.)

20.     The Appeals Council declined to review Plaintiff's case, stating that the new evidence "did not show a reasonable probability that it would change the outcome of the decision." (R. at 2.) This was error.

21.     "Pursuant to 20 C.F.R. § 416.1470(a)(5), the Appeals Council will review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). Where "the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded." Webster v. Colvin, 215 F. Supp. 3d 237, 244 (W.D.N.Y. 2016).

22.     "[W]hen claimants submit to the Appeals Council treating-physician opinions on the nature and severity of their impairments during the relevant period of disability, 'the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to' that opinion." Kurten v. Comm'r of Soc. Sec., No. 18-CV-0174-JWF, 2019 WL 4643606, at *3 (W.D.N.Y. Sept. 24, 2019) (citing Djuzo, 2014 WL 5823104, at *3.) "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 134

(2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). "It is insufficient for the Appeals Council to merely acknowledge that they reviewed new evidence from a treating physician without providing such reasoning." Seifried ex rel. A.A.B. v. Commissioner of Soc. Sec., No. 6:13–CV–0347 (LEK/TWD), 2014 WL 4828191, at *4 (N.D.N.Y. Sept. 29, 2014).

23.     The treating physician rule provides that "the opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019). If the ALJ or Appeals Council decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

24.     Having reviewed the entire record, including the new evidence Plaintiff submitted, this Court finds that the ALJ's decision is not supported by substantial evidence, for two reasons.

25. First, this Court finds a reasonable probability that Dr. Vitticore's 2018 opinion would change the outcome of the decision. Dr. Vitticore opined that Plaintiff would be off task 30% of the time, and that she would be absent 4 days per month. (R. at 329.) The ALJ did not have this assessment before him when he formulated Plaintiff's RFC. At Plaintiff's hearing, the VE stated that missing more than one day of work per month would be work preclusive, as would taking one additional break of 60 minutes per day. (R. at 365.) Thus, if the ALJ had had Dr. Vitticore's 2018 opinion—assuming the ALJ gave it some weight as a treating physician's opinion—there is a reasonable probability that this new evidence would have led to a different outcome.

26. Additionally, the Appeals Council was required to analyze Dr. Vitticore's opinion in accordance with the treating physician rule. The Appeals Council did not mention the fact that some of the new evidence was an opinion by a treating physician. Nor did it give the opinion controlling weight, or explain why it did not do so, pursuant to the Burgess factors. It therefore did not give the "good reasons" required for rejecting it. Djuzo, 2014 WL 5823104, at *4.

27. When the Appeals Council fails to give the proper weight to a treating physician's opinion, the proper course for a court is to remand the matter to the Commissioner for reconsideration in light of the new evidence to "provide the type of explanation required under the treating physician rule." Farina v. Barnhart, No. 04 CV 1299 JG, 2005 WL 91308, at *5 (E.D.N.Y. Jan. 18, 2005); see also Flagg v. Colvin, No. 5:12–CV–0644 (GTS/VEB), 2013 WL 4504454, at 7 (N.D.N.Y. Aug. 22, 2013) (explaining that remand for reconsideration of new medical evidence is required where the Appeals Council's failure to provide good reasons for discounting a treating physician's opinion

frustrates meaningful review). This Court finds that remand is warranted. On remand, the ALJ is directed to provide an explanation for its assessment of Dr. Vitticore's 2018 opinion pursuant to the treating physician rule.

28.     Plaintiff also argues that the ALJ failed to properly credit Dr. Vitticore's 2016 medical opinion, and that the ALJ failed to properly consider Plaintiff's severe and non-severe impairments. Because remand is warranted for other reasons, this Court will not address these arguments here. Upon remand, the ALJ may consider these arguments as it considers appropriate.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:     July 30, 2020
           Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge